David M. STANLEY, Hilarius L. Heying, Cloyd Robinson, Jane A. Miller, Don Carver, Herbert A. Wilson, Edward D. Failor, Sr., Margaret Beals, Joann Fetner, John G. Giblin, Riley Gillette, Hugh S. Greig, Edwin A. Hicklin, Herbert H. Kersten, Marjorie E. Kreager, Donald P. Racheter, Donald H. Shaw, Jean Leu Stanley, Tom Vance, Keith L. Vetter, and C.H. Woodward, Appellants,

v.

Michael L. FITZGERALD, Treasurer of the State of Iowa, Appellee.

No. 92–1234.

Supreme Court of Iowa.

Dec. 22, 1993.

William Sidney Smith & Ronald L. Mountsier of Smith, Schneider, Stiles, Wimer & Hudson, P.C., Des Moines, for appellants.

Bonnie J. Campbell, Atty. Gen., Elizabeth M. Osenbaugh, Deputy Atty. Gen., and Julie F. Pottorff, Sp. Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This appeal stems from a broad challenge by taxpayers to the legality and constitutionality of our state government's fiscal practices. The narrower question before us, however, is whether the district court erred in dismissing plaintiffs' petition on issue preclusion grounds. Because we find that the pertinent issues have not been previously litigated or determined, and the State offers no other persuasive basis upon which to uphold the court's dismissal, we reverse and remand for further proceedings.

The plaintiffs are citizens belonging to an organization called Iowans for Tax Relief. This litigation centers on their professed concern over the State's use of tax and revenue anticipation notes, commonly known as TRANs. TRANs are financial instruments used by the treasurer for cash flow borrowing. Authorized by statute, the notes are based on anticipated state revenues and must be paid by the end of the fiscal year for which they are issued. Iowa Code § 12.26 (1991).

In February 1991, plaintiffs brought a petition for declaratory judgment and injunctive relief against the state executive council and its individual members—the governor, the secretary of state, the auditor, the treasurer, and the secretary of agriculture. Plaintiffs alleged that the council or its members had authorized the issuance of TRANs in excess of the $250,000 debt limitation set forth in article VII, section 2 of the Iowa Constitution. The action was dismissed, however, upon the State's motion that because the executive council was a state agency, plaintiffs had failed to exhaust their administrative remedies under Iowa Code chapter 17A. The court also ruled that the petition's general allegations against the individual council members were insufficient to state a cause of action against them. Plaintiffs took no appeal from this decision. Instead, they filed two petitions for declaratory rulings under Iowa Code section 17A.9, one with the treasurer and one with the auditor.

This appeal concerns only the proceedings before the treasurer. In their petition, plaintiffs posed detailed hypotheticals concerning the treasurer's borrowing authority and repayment obligations under Iowa Code sections 12.25 and 12.26. They alleged, among other things, that the State uses accrual basis accounting for revenues and cash basis accounting for expenditures, thereby manipulating the true financial condition of the state treasury. The petition sought rulings from the treasurer on the constitutionality and legality of issuing TRANs under these circumstances.

The treasurer declined to rule on plaintiffs' petition. His decision rested on two main grounds. First, he expressed belief that a declaratory ruling would be an inappropriate vehicle for addressing the issues raised. Second, he ruled that a controversy over the legality of state budget practices would be better resolved in a forum in which all relevant state agencies could contribute.

Plaintiffs did not seek judicial review of the treasurer's refusal to rule. Instead they filed an original action in district court which urged that their administrative remedies had been exhausted or were inadequate. The petition sought both declaratory and injunctive relief on the same issues raised at the administrative level. Coincidentally plaintiffs filed their petition just before the treasurer planned to issue $375,000,000 in TRANs to pay state obligations for the 1992–93 fiscal year.

The treasurer swiftly responded by moving for dismissal under Iowa Rule of Civil Procedure 104(b), asserting that the petition failed to state a claim upon which relief could be granted. His motion asserted that plaintiffs had twice filed legal proceedings to determine the issues set forth in the petition and, having failed to appeal those prior rulings, urged that they were now barred by the doctrine of issue preclusion from pursuing them again. In the alternative, the treasurer claimed that plaintiffs could not prevail as a matter of law because (1) TRANs are not "debt" as that term is used in the state constitution; (2) any challenge to the issuance of TRANs for the 1991–92 fiscal year had been mooted by their payment; and (3) plaintiffs were guilty of laches. Following an expedited hearing, the district court summarily dismissed the action on issue preclusion grounds. This appeal followed.

I. The question is whether the district court's first dismissal on exhaustion grounds, or the treasurer's subsequent refusal to rule, operated as adjudications on the merits of the controversy before us. We are convinced that they did not.

■ Before a case may be properly dismissed upon issue preclusion grounds, the party urging dismissal must establish four things: (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981). As with any motion to dismiss

predicated on Iowa Rule of Civil Procedure 104(b), the movant must convince the court that plaintiffs' claim would not entitle them to relief under any state of facts provable under the allegations of the petition. *Rittscher v. State,* 352 N.W.2d 247, 250 (Iowa 1984). On our appellate review of the dismissal, we construe those allegations in the light most favorable to the plaintiffs, with all doubts resolved in their favor. *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.,* 460 N.W.2d 858, 861 (Iowa 1990).

■ It is apparent that the district court's ruling on the exhaustion issue did not resolve the merits of plaintiffs' initial declaratory judgment action against the executive council and its members; it merely steered plaintiffs toward the appropriate administrative forum. Thus whether the issues subsequently raised before the treasurer were identical or not, consideration of them was not barred because they had yet to be litigated.

■ The parties' real quarrel is with the nature and scope of the treasurer's ruling. As already noted in this opinion, the treasurer exercised his discretion *not* to rule because "[u]se of the declaratory ruling process by this Agency would be an inappropriate means of addressing the issues raised by the Petitioners." Specifically, the treasurer cited plaintiffs' failure to show that issuance of a ruling would adversely affect the plaintiffs in the conduct of their affairs; his concern that the questions raised were complex and should be resolved in a forum in which "all agencies of the State" could contribute; and, finally, his belief that a ruling by the treasurer would not achieve the result desired by plaintiffs, *i.e.,* a revision of the State's fiscal practices.

The question boils down to whether the treasurer's ruling was, as the treasurer now suggests, really a ruling on the merits of whether the treasurer is the proper party to this suit. We think not. His ruling specifically conceded his authority relative to many of the issues raised by the petition, including the duty to uphold the fiscal laws of the state. In explaining his decision not to rule on the merits, he merely stated that he shares those duties with others.

Had plaintiffs sought judicial review of the treasurer's decision not to rule, the review

would have been limited to determining whether the treasurer abused his discretion in declining. *Campbell v. Iowa Beer & Liquor Control Dep't,* 366 N.W.2d 574, 576 (Iowa 1985). The court would have been without authority to rule on the merits. *Id.; PERB v. Stohr,* 279 N.W.2d 286, 290 (Iowa 1979). As we noted in *Campbell,* when an agency declines to rule on a petition for declaratory judgment, the petitioner has two avenues of relief: to challenge the propriety of the declination by way of judicial review, or to proceed with an original action for declaratory or other relief in district court. *Campbell,* 366 N.W.2d at 576. The latter remedy stems from Iowa Code section 17A.19(1). That statute provides that if the agency declines to issue a declaratory ruling, the petitioners' administrative exhaustion requirements are satisfied. Iowa Code § 17A.19(1). Thus we decided in *Campbell* that petitioners were permitted to seek an adjudication on the merits of the controversy in district court. *Campbell,* 366 N.W.2d at 577.

In summary, the treasurer's discretionary decision not to rule on plaintiffs' declaratory judgment petition triggered plaintiffs' right to proceed in district court on the merits of the controversy. The question in district court will be not whether the treasurer should have issued declaratory rulings, but whether the plaintiffs are entitled to the declaratory and injunctive relief they seek. These matters have yet to be litigated in this dispute. Thus the district court erred when it dismissed the petition on issue preclusion grounds.

II. The treasurer urged before the district court, and renews on appeal, other grounds for dismissal of plaintiffs' petition. We shall consider them briefly in turn. *See Fitzpatrick v. State,* 439 N.W.2d 663, 665 (Iowa 1989) (district court may be sustained on any ground properly raised below).

■ A. *Treasurer's duty.* The treasurer disclaims any lawful duties relevant to state budget practices and, hence, argues that he is entitled to dismissal as a matter of law. In response, plaintiffs contend that the treasurer misconstrues the relief they seek. Even if the treasurer lacks control over state budget and accounting methods, they argue, if those methods fail to provide him with an accurate prediction of receipts and expenditures, he may not lawfully rely on those projections when issuing TRANs.

To resolve these competing claims we look to Iowa Code chapter 12 which defines the treasurer's duties. Sections 12.1 to 12.3 charge the treasurer with the duty of managing the state's cash resources. His authority to issue TRANs is governed by Iowa Code section 12.26. That section states in pertinent part:

In anticipation of the collection of revenues in and for a fiscal year, the treasurer of state may borrow money, and issue notes for the money, in an amount not exceeding the estimated state revenues for that year.... The notes may be issued prior to the beginning of a fiscal year, but the notes shall be payable not later than the end of the fiscal year for which they are issued.... The proceeds from the issuance of notes shall be invested in the same manner as other public funds and shall be used only for the purposes for which the anticipated tax revenues were levied, collected, and appropriated.

Iowa Code § 12.26(1). The issuance of TRANs is necessary and authorized to permit timely payment of the state's financial obligations, particularly its payment of school aid. Iowa Code § 12.25.

Plaintiffs' petition claims that the treasurer regularly issues TRANs in direct violation of these statutory provisions. It alleges that each year, when new TRANs are issued, a portion of the proceeds is applied toward the prior fiscal year's school aid appropriation, that payment having been delayed to raise cash to pay off that year's TRANs. It further alleges that the state's methods of accounting permit the treasurer to create the appearance of retiring TRANs from current state revenues, when in fact such repayment is made from the proceeds of the subsequent fiscal year's issuance. The result, plaintiffs contend, is the treasurer's complicity in the creation of constitutionally prohibited debt.

We believe these allegations raise factual and legal questions concerning the duties and obligations of the treasurer that cannot be resolved properly on a motion to dismiss. Thus the court's dismissal cannot be upheld on this ground.

**B.** *TRANs as "debt."* Article VII, section 2 of the Iowa Constitution limits the state's contractual debt to $250,000. Plaintiffs' petition asserts that the treasurer's issuance of TRANs has caused the state to incur debt greatly in excess of that amount. The treasurer responds by alleging that TRANs do not constitute "debt" within the meaning of section 2, and thus, plaintiffs cannot prevail on this claim as a matter of law.

Again, the treasurer seems to misperceive plaintiffs' allegations. Plaintiffs do not contend that TRANs automatically create debt unauthorized by the constitution. They concede that in *Rowley v. Clarke,* 162 Iowa 732, 740–41, 144 N.W. 908, 912 (1913), this court held that TRANs issued and paid in the same fiscal year do not create unconstitutional debt. What they do argue is that the treasurer's use of current TRANs proceeds to satisfy obligations deferred from a prior fiscal year takes this case out of *Rowley*'s purview. *See, e.g., Wein v. State,* 39 N.Y.2d 136, 148, 347 N.E.2d 586, 592, 383 N.Y.S.2d 225, 231 (1976) ("[I]f repayment of tax and revenue anticipation notes may only be made by creating, directly or indirectly, a budgetary deficit in the year of repayment, such borrowing is not an anticipation of the receipt of taxes and revenues and thus violates constitutional limitations.").

Viewing these allegations in the light most favorable to the plaintiffs, we cannot say that the petition fails to state a cause of action upon which relief could be granted. We find no merit in the treasurer's attempt to uphold the dismissal on this ground.

**C.** *Mootness and laches.* The remaining grounds urged by the treasurer to sustain the district court's ruling are similarly unavailing.

On the mootness issue, the treasurer argues that because the petition refers specifically to his issuance of TRANs for the 1991–92 fiscal year, which TRANs have now been retired, the case is moot. We do not agree. On its face the petition seeks declaratory rulings and injunctive relief for practices alleged to be continuing in nature. Moreover the allegations relate to matters of public importance that arguably need authorita-

tive adjudication for future guidance of public officials. These considerations are sufficient to bring the matter within the public interest exception to the mootness doctrine. *Rush v. Ray,* 332 N.W.2d 325, 326 (Iowa 1983).

Finally, the treasurer asserts that, by bringing a belated suit challenging the issuance of the 1991–92 TRANs after they had already been paid, plaintiffs are guilty of laches and their suit must be dismissed. The claim is entirely without merit. A party asserting laches must establish prejudice by clear, convincing, and satisfactory evidence. *State v. Peterson,* 347 N.W.2d 398, 404 (Iowa 1984). Even if such evidence existed, the court would have been without authority to consider it in support of a motion to dismiss under rule 104(b). *See Leuchtenmacher,* 460 N.W.2d at 861 (motion to dismiss under rule 104(b) may not be based on facts not alleged in the pleading attacked).

**REVERSED AND REMANDED.**