**GRAINS OF IOWA L.C., I.D. No. 1388065, Petitioner–Appellant,**

v.

**IOWA DEPARTMENT OF AGRICULTURE AND LAND STEWARDSHIP, Respondent–Appellee.**

No. 95–1374.

Court of Appeals of Iowa.

Feb. 26, 1997.

John T. McCoy of Yagla, McCoy & Riley, Waterloo, for petitioner–appellant.

Thomas J. Miller, Attorney General, and Timothy D. Benton, Assistant Attorney General, for respondent–appellee.

Heard by SACKETT, P.J., and HABHAB, C.J., and VOGEL, J.

HABHAB, Chief Judge.

Petitioner-appellant appeals the district court ruling sustaining respondent-appellee's motion to dismiss petitioner's declaratory judgment petition on the grounds of lack of subject matter jurisdiction. We affirm on the grounds hereafter set forth.

### I.

Petitioner-appellant Grains of Iowa L.C. (Grains of Iowa) is a grain dealer licensed pursuant to Iowa Code chapter 203. Respondent-appellee Iowa Department of Agriculture and Land Stewardship (the Department) is an administrative agency authorized

by Iowa Code chapter 203 to supervise grain dealers.

Iowa Code section 203.9 requires the Department to inspect each Iowa grain dealer at least once every eighteen months. That section provides, in relevant part:

> The department may inspect the premises used by any grain dealer in the conduct of the dealer's business at any time, and the books, accounts, records, and papers of every grain dealer which pertain to grain purchases are subject to inspection by the department during ordinary business hours.[1]

## II.

Grains of Iowa filed a petition for declaratory judgment asking the district court to construe and confirm the legal standards of Iowa Code section 203.9. On appeal, Grains of Iowa asserts the district court erred when ruling on respondent's motion to dismiss when it "recharacterized Grains of Iowa's petition as requesting a determination as to which records pertain or do not pertain to grain purchases." Grains of Iowa argues in its brief:

> Grains of Iowa did not ask the district court to review any past action of the Department against Grains of Iowa or against any other grain dealer and did not ask the district court to render a factual finding regarding any matter within the Department's administrative authority.

The Department, on the other hand, correctly points out that Grains of Iowa's petition for declaratory relief contains a "request that the court enter a declaratory judgment regarding the legal rights and duties of petitioner and respondent." It asserts Grains of Iowa is attempting to skirt the requirements of the Iowa Administrative Procedure Act (IAPA) by contending that because the agency has not initiated any action against it, there has been no agency action. It calls to our attention the prayer in the declaratory judgment petition which asks the court to determine, among other things:

> That Iowa Code section 203.9 expressly limits the authority and scope of Respondent's inspection of a grain dealer's books, accounts, records and papers to only those documents which pertain to grain purchases.

In addition, Grains of Iowa asks us on remand that we instruct the trial court to hold:

> [T]hat the failure of a grain dealer to provide books ... not pertaining to grain purchases upon request or demand of the Respondent [Department] during an ordinary inspection, pursuant to the provisions of Iowa Code section 203.9, does not constitute a failure of the grain dealer to submit to such an inspection by the Respondent and is not grounds to revoke or suspend the license of such a grain dealer.

The Department concludes by arguing that Grains of Iowa is also asking this court to set forth the agency's duties and, as such, Iowa Code section 17A.2(9) defines "agency action" broadly enough to include the "performance of any agency duty."

Because of the results we reach, many of the arguments posed by the parties need not be addressed. On the record before us, Grains of Iowa's petition for declaratory relief was properly dismissed for the reasons which we address under separate divisions.

## III.

■ Turning first to the Department's contention that Grains of Iowa's declaratory judgment action is, in effect, a lawsuit directed at an agency action, we note the following finding of the district court which formed the basis for its dismissal of the Grains of Iowa petition:

> While characterized as a petition to construe and interpret Iowa Code section 203.9, it is obvious that what the Petitioner

---

1. Iowa Code section 203.9 was formerly Iowa Code section 542.9 (1991) which was transferred to section 203.9 by the 1993 Iowa Code Editor. *See* Iowa Code Ann. § 203.9 historical note (West 1994). This records inspection provision was originally enacted in 1973 by House File 383 in chapter 276 of the Laws of the Sixty–Fifth General Assembly. The original Iowa Code chapter 542.9 (now Iowa Code section 203.9) did not contain the clause "which pertain to grain purchases." Five years later, the Sixty–Seventh General Assembly, in its 1978 session, amended Iowa Code chapter 542.9 (now section 203.9) by inserting this provision.

is actually requesting is a declaratory ruling as to the applicability of that statute to certain records which Petitioner maintains and which do not, according to Petitioner, pertain to grain purchases.

We agree with the district court any suggestion in the declaratory judgment action, either directly or by inference, that requests a ruling as to the applicability of section 203.9 to certain records maintained by Grains of Iowa and "which do not, according to Grains of Iowa, pertain to grain purchases," is grounds for dismissal of the action. This is so for the Department is an agency of the State under Iowa Code section 17A.2(1), and generally an agency action is reviewed under the Iowa Administrative Procedures Act (IAPA).

Under Iowa Code section 17A.19, the judicial review provisions of the IAPA are the "exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review." *See Salsbury Lab. v. Iowa Dep't of Envtl. Quality*, 276 N.W.2d 830, 835 (Iowa 1979). Section 17A.19(1) further states, "[a] person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any *final* agency action is entitled to judicial review thereof under this chapter." Iowa Code § 17A.19(1) (emphasis added). "A preliminary, procedural or intermediate agency action is immediately reviewable [only] if all adequate administrative remedies have been exhausted and review of the final agency action would not provide an adequate remedy." *Id.*

■ When reviewing agency action, the district court exercises only appellate jurisdiction and review is for errors at law. *PERB v. Stohr*, 279 N.W.2d 286, 289–90

(Iowa 1979). The "district court has no *original* authority to declare the rights of parties or the applicability of any statute or rule." *Id.* Therefore, the district court may review only the challenged agency action and may not issue an original declaratory judgment. *Id.*

■ Our supreme court has recognized that only in certain narrow circumstances, none of which are applicable here, may a petitioner bypass judicial review and file an action invoking the district court's original jurisdiction to issue a declaratory judgment. *See Tindal v. Norman*, 427 N.W.2d 871 (Iowa 1988); *Campbell v. Iowa Beer & Liquor Control Dep't*, 366 N.W.2d 574 (Iowa 1985).[2] The policy underlying the need for agency exhaustion and finality is rooted in judicial economy:

> The exhaustion of remedies requirement is a highly utilitarian principle of administrative law both as an expression of administrative autonomy and a rule of sound judicial administration. The agency has been legislatively created as an entity vested with its own powers and duties. It should be free to work out its own problems, and courts should not interfere with its work until the agency has completed its task. Courts should neither anticipate the final administrative decision on their own nor intervene before the final decision at the highest agency level has been formulated.

*Pro Farmer Grain v. Iowa Dep't of Agric.*, 427 N.W.2d 466, 469 (Iowa 1988).

■ It is clear in those instances where the district court lacks original jurisdiction that an agency should be free to work out its own problems[3] and courts should not interfere with its work until the agency has completed its task. Grains of Iowa does not

---

2. In *Campbell*, the court held that the district court lacked original jurisdiction to decide the merits of the petition for declaratory ruling and could only review the agency's refusal to issue the declaratory ruling through the exercise of its appellate jurisdiction. *Campbell v. Iowa Beer & Liquor Control Dep't*, 366 N.W.2d 574, 576 (Iowa 1985). The court, however, held that a party whose request for declaratory ruling has been denied has exhausted administrative remedies under section 17A.19(1) and, therefore, may seek judicial review or bring a subsequent original action for declaratory or other appropriate relief.

*Id.* at 577. However, here Grains of Iowa did not request a declaratory ruling from the Department prior to launching its lawsuit.

3. Declaratory judgments and other common law writs are original actions with varying standards of inquiry and review, and little simplification would be achieved if the provisions of section 17A.19 could be discarded in favor of declaratory judgment. *See Salsbury Lab. v. Iowa Dep't of Envtl. Quality*, 276 N.W.2d 830 (Iowa 1979).

dispute this statement, nor does it seriously challenge the trial court's authority under most circumstances to dismiss a declaratory judgment action that seeks an adjudication as to whether certain specific records pertain to grain purchases.

■ For the reasons set forth in the division that follows, we conclude appellant's petition was properly dismissed. Before proceeding to that division, however, we call to the attention of the parties that the legislature, by enacting the amendment to section 203.9, clearly limited the Department's inspection power to those records of the grain dealer that pertain to grain purchases. That part of the chapter is clear and unambiguous. We believe that section 203.9 not only says what it means, but means what it says. *See Parker v. Tuttle,* 260 N.W.2d 843, 848–49 (Iowa 1977).

■ However, that pronouncement by us is of little consequence, for there is not a justiciable issue before us as to what records of the grain dealer pertain to grain purchases.[4] The question of which records pertain to grain purchases will have to be resolved on a case-to-case basis where the issues are properly joined.[5] As noted under Division IV, there is not a specific adverse claim based upon present rather than future or speculative facts that needs judicial adjustment.

## IV.

It is said in 22A American Jurisprudence Second *Declaratory Judgment* § 71, at 728 (1988):

**4.** The circumstance here is somewhat akin to the following statement taken from *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972), "once it is determined that due process applies, the question remains what process is due." Thus, here, although it is determined the Department's inspection powers are limited to records pertaining to grain purchases, the question always remains what records pertain to grain purchases.

**5.** There is suggestion under chapter 203 the Department may have the authority to perform more extensive "special" inspections if the Department has "good cause." *See* Iowa Code §§ 203.1(6), 203.3(4)(b), and 203.3(5)(b); *see also* Iowa Admin. Code r.21–91.18(1). In addition, until we have a justiciable issue before us,

In order to serve as a basis for declaratory relief, a controversy involving a statute or ordinance must be justiciable—that is, there must be specific adverse claims, based upon present rather than future or speculative facts, which are ripe for judicial adjustment.

As our supreme court stated in *Katz Inv. Co. v. Lynch,* 242 Iowa 640, 47 N.W.2d 800 (1951):

It is true, as appellees argue, that declaratory relief will not ordinarily be granted where there is no actual or justiciable controversy between the parties and a mere advisory opinion is sought. Likewise, courts frequently decline to pass upon remote, future, or contingent rights which may never arise, at least where there is no present need for such determination or, because of absence of parties or otherwise, the determination may not be final.

*Id.* 47 N.W.2d at 805.

■ We have examined the record and are unable to find that there is an actual or justiciable controversy [6] between the parties. Declaratory judgment rules deal with present rights. As such, each petition must be examined to determine whether such legal rights are at issue between the parties. From our examination of the total record, we are unable to find there is any legal right at issue between the parties. As our supreme court stated in *Wesselink v. State Dep't of Health,* 248 Iowa 639, 80 N.W.2d 484 (1957):

we are unable to direct the manner in which the determination is made as to what records pertain to grain purchases, *i.e.,* an *in camera* inspection by the agency or the trial court, or some other method that satisfies the requirements of the law. Nor can we give the advisory opinion requested in appellant's brief.

**6.** There is a claim by appellant that the Department somewhere in the proceedings took the position that it had the right to inspect records, even if they did not pertain to grain purchases. It occurs to us that the trial court carried on a rather extensive dialog with the attorney for the Department, who admitted on the record and before us in oral arguments that the Department's authority was confined to records which pertain to grain purchases.

Our declaratory judgment rules necessarily deal with present rights, and we must examine carefully each petition to determine whether such legal right is in issue between the parties litigant. It has often been said it is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative. Borchard, in his Declaratory Judgments, Second Edition, pages 41–42, states:

> Were the controversy not genuine or ripe for judicial decision, with a plaintiff and defendant having actually or potentially opposing interests, with a res or other legal interest definitely affected by the judgment rendered and the judgment a final determination of the issue, it would fail to present a justiciable dispute—not because it seeks a declaratory judgment, but because it lacks the elements essential to invoke any judgment from judicial courts.
>
> . . . .
>
> Defendants correctly contend there must be sufficient facts pleaded to show that the issue is concrete and that particular legal rights and powers will be or are affected. Otherwise the court would be justified in dismissing the petition as merely advisory in character.

*Id.* 80 N.W.2d at 486–87 (citations omitted).

■ We conclude this case is not adjudicable or fully ripened for it seeks to determine abstract questions not resting upon existing or determinable facts or rights. In many respects it is "advisory," for the judgment sought would not constitute specific relief to a litigant or effect legal relations, nor would the judgment be sufficiently conclusive. This controversy does not involve an actual, genuine, live controversy, nor does it effect existing legal relations. *See Wickey v. Muscatine County*, 242 Iowa 272, 46 N.W.2d 32, 40 (1951).

The trial court's ruling is affirmed.

**AFFIRMED.**

VOGEL, J., concurs; SACKETT, P.J., dissents.

SACKETT, Presiding Judge (dissenting).

I dissent. This controversy arose over the Department of Agriculture's right to gather records from plaintiff Grains of Iowa under the provisions of Iowa Code section 203.9. This code provision limits the agency's authority to inspect only those documents which pertain to grain purchases. The agency sought and continues to seek additional records plaintiff, under this code provision, is not required to provide.

This case asks that we declare the Code limits the department to only obtain those documents pertaining to grain purchases. There is a basis for plaintiff's action and it is not premature.

I would grant plaintiff the relief it requests and order that the department be instructed the failure of a grain dealer to provide books not pertaining to grain purchases on demand of the agency during an ordinary inspection does not constitute a failure of the grain dealer to submit to an inspection and does not revoke or suspend the license of the dealer. If the agency is to have additional powers of inspection, those additional powers should be given by the legislature and not created by the agency's own actions.

This is not a case of an agency merely completing its task; rather, it is a case of an agency seeking to exercise powers it does not have to inquire in the affairs of a business.